UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

TRACY CANNON, as Administratrix of the Estate of MARK CANNON, Jr.,

   Plaintiff,

v.

CORRECTIONAL MEDICAL CARE, INC.,
EMRE UMAR, MARIA CARPIO,
SILVER MASABA, K. COOGAN, R.N.
JOHN DOE NUMBER 1-2, employees of
Correctional Medical Care, Inc., whose identity cannot presently be determined,
JOHN DOE NUMBER 3, a corrections officer whose identity cannot presently be determined,
COUNTY OF ALBANY,
CRAIG APPLE, SR. and
CHRISTIAN CLARK,

   Defendants.

**COMPLAINT**

Civil Action No.:   9:15-cv-1417 (GLS/DJS)

**JURY TRIAL DEMANDED**

---

  Plaintiff Tracy Cannon, as Administratrix of the Estate of Mark Cannon, Jr., through counsel, the Law Offices of Elmer Robert Keach, III, PC, hereby complains and alleges regarding the Defendants' conduct as follows:

### JURISDICTION

  1. This Court has jurisdiction over this action pursuant to the provisions of 28 U.S.C. §§ 1331, 1341, 1343 because it is filed to obtain compensatory and punitive damages for the deprivation, under color of state law, of the rights of citizens of the United States secured by the Constitution and federal law pursuant to 42 U.S.C. § 1983.

  2. This Court also has supplemental jurisdiction over claims asserted in this action under New York State law pursuant to 28 U.S.C. § 1367. A timely Notice of Claim was filed in

1

this action. The County of Albany subsequently conducted a Gen. Mun. Law Section 50-h hearing prior to the filing of this action. The Notice of Claim only addressed claims for conscious pain and suffering. A separate Notice of Claim will be filed for wrongful death claims, and will be the subject of an Amended Complaint to be filed at a later time.

3. Plaintiff Tracy Cannon is the mother of the decedent Mark Cannon, Jr. Plaintiff obtained Temporary Limited Letters of Administration on Behalf of the Estate of Mark Cannon, Jr. on November 24, 2015. A copy of these Temporary Limited Letters is attached hereto as **Exhibit A**.

4. Venue is proper under 28 U.S.C. § 1391 (e)(2) because the events giving rise to Plaintiff's claims occurred in this judicial district.

## PARTIES

5. Plaintiff Tracy Cannon is a citizen of the United States and currently resides in Schenectady County. Plaintiff is the Administratrix of the Estate of Mark Cannon, Jr. Decedent Mark Cannon died while in the custody of the Albany County Jail on August 30, 2014.

6. Defendant Correctional Medical Care, Inc. is a corporation duly licensed to conduct business in the State of New York, with its principal place of business being 920 Harvest Drive, Suite 120, Blue Bell, Pennsylvania.

7. Defendant Emre Umar was and remains employed as the duly appointed president of Correctional Medical Care, Inc. with his principal place of business being 920 Harvest Drive, Suite 120, Blue Bell, Pennsylvania.

8. Defendant Maria Caprio was and remains employed as the duly appointed Chief Executive Officer of Correctional Medical Care, Inc. with her principal place of business being 920 Harvest Drive, Suite 120, Blue Bell, Pennsylvania.

9. Upon information and belief, Defendant Silver Masaba was employed by Correctional Medical Care, Inc., as a physician, with his principal place of business being 840 Albany Shaker Road, Albany, New York.

10. Upon information and belief, Defendant K. Coogan, R.N. was employed by Correctional Medical Care, Inc., as a registered nurse, with her principal place of business being 840 Albany Shaker Road, Albany, New York.

11. Upon information and belief, Defendant John Doe Number One, whose first name may start with a "c" was employed by Correctional Medical Care, Inc., as a nurse, with their principal place of business being 840 Albany Shaker Road, Albany, New York. The Plaintiff cannot presently determine the identity of this individual, as their handwriting in the decedent's medical records is illegible. However, this individual was responsible for providing Mark Cannon, Jr. medical treatment prior to his death. Plaintiff believes she will be able to identify these individuals upon receipt of the Defendants' initial disclosures.

12. Upon information and belief, Defendant John Doe Number Two was employed by Correctional Medical Care, Inc., as a nurse, with their principal place of business being 840 Albany Shaker Road, Albany, New York. The Plaintiff cannot presently determine the identity of this individual. However, this individual was responsible for providing Mark Cannon, Jr. medical treatment prior to his death. Plaintiff believes she will be able to identify these individuals upon receipt of the Defendants' initial disclosures.

13. Upon information and belief, Defendant John Doe Number Three, whose first name may be Joe with badge number 476, was employed by the Albany County Jail as a corrections officer, with his principal place of business being 840 Albany Shaker Road, Albany, New York. The Plaintiff cannot presently determine the identity of this individual. However, this individual observed Mark Cannon, Jr. in extreme medical distress prior to his death. Plaintiff believes she will be able to identify these individuals upon receipt of the Defendants' initial disclosures.

14. Defendant County of Albany is a municipality duly incorporated under the laws of the State of New York, with its principal place of business being 16 Eagle Street, Albany, New York.

15. Defendant Craig Apple, Sr. was and remains employed as the duly appointed Sheriff of Albany County, with his principal place of business being 16 Eagle Street, Albany, New York.

16. At all relevant times herein, Defendant Christian Clark was the Jail Administrator of the Albany County Jail, with his principal place of business being 840 Albany Shaker Road, Albany, New York.

**FACTS**

17. Decedent Mark Cannon, Jr. ("decedent"), a 24 year old man with one child, died an excruciatingly painful death while in the custody of the Albany County Jail on August 30, 2014, the date of his 24th birthday. Mr. Cannon ultimately suffered a Basilar Artery Occlusion and a Brain Stem Infarction, which in turned caused respiratory failure. This condition is commonly referred to as a stroke.

18. For more than 24 hours prior to his death, the decedent exhibited extreme medical symptoms such that any lay person, and especially trained medical staff, knew or should have known that he required immediate medical treatment. Specifically, during the early afternoon, and upon information and belief, and in the early morning of August 26, 2014, the decedent began experiencing significant medical symptoms including, but not limited to, lightheadedness, dizziness, sweating, vomiting, and severe motor impairment. The Decedent also had trouble breathing, and ultimately became unable to walk.

19. Eventually, a medical emergency was called by, upon information and belief, a corrections officer, at or about 2:00pm on the 26th. In response, John Doe Number One, a nurse employed by Correctional Medical Care, visited the decedent's cell, as Mr. Cannon was unable to ambulate to medical without assistance. In addition to the above-listed symptoms, John Doe Number One also observed that the decedent's vomiting and dizziness had increased, which indicates that the decedent had been exhibiting these symptoms prior to the evaluation. The decedent's condition was so severe that he was rendered unable to walk, and was taken to the infirmary in a wheelchair.

20. Rather than provide the decedent with immediate medical assistance, John Doe Number One merely gave him Gatorade. The decedent's deteriorating condition was observed by John Doe Number One for several hours, during which he was provided no meaningful medical treatment, nor, upon information and belief, was the jail's physician contacted. Several hours later, the decedent was then ordered to return to his cell.

21. On his way back to his cell, numerous individuals observed the decedent exhibiting severe motor impairment, including stumbling, walking in zigzagging lines, and holding onto walls to keep himself from falling. One inmate approached John Doe Number Three, who was the

Corrections Officer on duty in the housing unit, and asked him to provide a dinner tray for the decedent. John Doe Number Three told the inmate that he was not going to provide the decedent with a dinner tray, as he had "f****ed up his night [by] making him do paper work so he was gonna f*** [the decedent's] night up." [sic].

22. Over the next several hours, the decedent's condition significantly deteriorated. Numerous inmates heard the decedent crying all night. They also heard the decedent try to stand up and fall several times. The decedent also continued to vomit, and because he was unable to move, covered himself in bile. During this time, the decedent repeatedly requested help from corrections staff, including upon information and belief, Corrections Officer John Doe Number Three. However, the decedent was informed by Corrections Officers that the medical staff were refusing to see him.

23. At or about 2:00AM, a corrections officer, who, upon information and belief, was John Doe Number Three, observed the decedent on the floor of his cell, unresponsive and moaning. Upon information and belief, John Doe Number Three refused to contact medical staff or initiate a medical emergency. Alternatively, and upon information and belief, John Doe Number Three contacted medical staff but they continued to refuse to evaluate the decedent.

24. At or around 3:30AM, medical staff, including Defendant K. Coogan, finally responded to the Corrections Officers' requests for medical assistance for the decent. Defendant K. Coogan observed that the decedent was covered in vomit and bile, foaming at the mouth, was unresponsive and incoherent, had an increased heartrate, increased respiration rate, and was unable to stand on his own. Defendant Coogan also observed that the decedent's blood pressure had increased drastically from 118/68 to 152/84. Defendant K. Coogan attempted to unsuccessfully revive the decedent with an ammonia inhalant. Inmates reported that the decedent was dragged out

of his cell by his leg through a pile of vomit. Rather than immediately send the decedent to the hospital, and/or contact the jail's physician, the decedent was again transported to the infirmary in a wheelchair and left in a cell for observation. The decedent's worsening condition was monitored by Defendant K. Coogan over the next hour.

25. At or about 4:30AM, Defendant K. Coogan again observed the decedent as incoherent and verbally unresponsive. The decedent was also observed moaning and crying, and his esophageal muscles were rigid and weak. At this point, Defendant K. Coogan finally called Defendant Silver Masaba, the jail's physician, who instructed the medical staff to immediately transport the decedent to Albany Memorial Hospital.

26. Counsel is unsure of whether this is the first time that Defendant Silver Masaba learned about the decedent's extreme medical condition.  However, given the severe symptoms exhibited by the decedent over several hours, it defies belief that the Defendant nurses would not contact the jail physician. Counsel believes, based upon prior litigation against the company, that the medical staff likely informed Defendant Masaba of the decedent's condition, but were instructed by Defendant Masaba not to send the decedent to the hospital, and to wait for him to evaluate the decedent when he was scheduled to work. Alternatively, the Defendant nurses failed to contact Defendant Masaba until it was apparent that the decedent was dying.

27. At or about 5:10AM, Mr. Cannon was transported to Albany Memorial Hospital. Upon information and belief, the Defendants failed to ensure that Mr. Cannon was transported to the hospital on an emergent basis, given that it took approximately 40 minutes before he was transported to the hospital. Soon after his arrival at Albany Memorial Hospital, it determined that Mr. Cannons' condition was too critical for them to handle. Thereafter, Mr. Cannon was transported to Albany Medical Center where they determined that it was too late to provide the

decedent with the ordinary course of medical treatment for a stroke, which needs to be provided within 3-4 hours of the stroke.

28. Mr. Cannon was left on life support for several days, but it was obvious that he was brain dead. Mr. Cannon expired on August 30, 2014, the date of his 24th birthday. Mr. Cannon left behind a young child.

29. Plaintiff's belief that decedent's death was caused by the negligence and/or deliberate indifference of corrections staff at the jail is further strengthened by the fact that the Commission of Corrections has yet to conclude their investigation into his death. Typically, when an inmate dies in the custody of a law enforcement agency, the Commission of Corrections will conduct different levels of investigation. Oftentimes, the Commission of Corrections will rely upon a facility's determination that the inmate's death was unavoidable, if the documents provided by the facility support clearly support their finding. This is often the case in suicide cases where the inmates gave no indication of suicidal intentions.

30. Alternatively, where the Commission of Corrections is left with questions regarding the circumstances of an inmate's death, they will conduct an abridged investigation, involving a limited and independent review of the records related to the death. However, when the Commission of Corrections has significant concerns regarding the circumstances surrounding a detainee's death, they will conduct a full investigation. These investigations often lead to reports faulting the facility for failing to follow appropriate policies and procedures, and/or failing to provide a detainee appropriate medical treatment. In light of the fact that the decedent's death is still being investigated by the Commission of Corrections more than a year later, Plaintiff strongly believes that the Commission is going to issue a negative finding against the Albany County Jail and Correctional Medical Care regarding one or more of the issues raised above.

31.     Defendant CMC, together with its President Emre Umar and owner Maria Carpio (who are married to each other), have engaged in a well-documented pattern and practice of providing inadequate and unqualified medical providers at the various facilities they manage, as well as inadequate medical care in general. Included in these practices is the affirmative policy of CMC in basing its employee's salaries, and continued retention, on the number of times that they refuse to send detainees to outside medical providers. The basis for this pattern and practice is simple: Money. Correctional Medical Care takes enormous sums from various municipalities throughout New York State, some of which are provided by contracts secured through political contributions, and then provides inadequate staffing and medical care in the name of profitability. The contracts that CMC has with various county governments are "all inclusive," with every dollar that CMC pays for outside medical providers coming directly from CMC's profit margins[1].

32.     The Commission of Correction has previously, and repeatedly, found deficiencies in staffing and care of detainees at the Albany County Jail and/or Correctional Medical Care facilities, including:

- Irene Bamenga – inmate died as a result of being denied medication for a known heart condition. The jail was subject to a federal investigation during which it was determined that Ms. Bamenga's death could have been prevented.

- Frederick Haag, Tioga County Jail – Committed suicide after exhibiting extreme symptoms of depression and suicidal ideation for months. The Commission of Corrections determined that the care provided to Mr. Haag, by an unlicensed and unqualified mental health director, was grossly negligent. The New York State Attorney General's Office also fined CMC $300,000, for failing to provide appropriate care at the Tioga and Monroe County Jails.

- Joaquin Rodriguez, Monroe County Jail – spent last five days "seriously ill … without medical care," medical care represented "gross negligence and gross incompetence."

---

[1] Plaintiff's allegations regarding his *Monell* claims are not pled upon information and belief, as the facts contained herein are based on evidence obtained in prior successful litigation against CMC, and information provided by current and past employees of CMC.

- Kevin Schmitt, Ulster County Jail – death by suicide. The Commission required the Ulster County sheriff to conduct an immediate review of the care provided by CMC, and recommended that they terminate their contract with CMC if they delayed making and/or refused to make any of the recommendations made by the Commission. The Commission also requested that the Office of Professions inquire into whether CMC, a corporation, was lawfully practicing medicine in New York.

- John Wright, Onondaga County Justice Center – death by morphine overdose. The Commission required CMC to "conduct a comprehensive inquiry into the grossly incompetent and inadequate care rendered to John Wright."

- Maria Viera, Monroe County Jail – "inappropriate and inadequate credentialing." Use of improperly trained and inexperienced nurse to perform initial assessment of detainee, detainee later dies of drug withdrawal.

- Richard Vandermark, Ulster County Jail – "failure to provide a timely mental health assessment."

- Alvin Rios, Broome County Jail – Required Broome County Executive to "conduct an inquiry into the fitness of Correctional Medical Care, Inc. as a correctional medical care provider, specifically for its failure to implement ... policy and procedure...".

- Justin McCue, Dutchess County Jail – inmate committed suicide by hanging as a result of inadequate policies and procedures.

- Robert Barksdale, Monroe County Jail – inmate committed suicide by hanging. The Commission required CMC to ensure that their staff are properly trained and follow their own policies and procedures.

- Dylan Burke, Oneida County Jail – death caused by inadequate detoxification treatment. The Commission instructed CMC to "cease treating opiate/narcotic withdrawal symptomatically with palliative medications which do not provide effective detoxification."

- Thomas Siewert, Dutchess County Jail – inmate committed suicide by hanging. The Commission recommended "In light of the fundamental and egregious lapse of care in this case, the Sheriff, in conjunction with the Executive, shall review the status of CMC, Inc. with respect to its capabilities as a medical, and in particular, a mental health service provider."

33. This is but a sampling of the parade of horribles wrought on helpless detainees by Correctional Medical Care, as summarized in a recent article in the Albany Times Union. *See*

10

Alysia Santo, *Inmates Die in Cost Cut: State Investigators Cite a Pattern of Inadequate Health Care Provided by For-Profit Companies at Jails,* Albany Times Union, Monday, April 1, 2013. **See Exhibit B**. Correctional medical Care has been sued successfully on countless occasions, both in New York and Pennsylvania regarding the deaths and serious injuries suffered by other detainees. The Commission of Correction was so concerned about the performance of CMC that it recommended to several counties that they terminate their contract, and further requested that the New York State Department of Education, Office of the Professions, take action against the company.

34. This pattern was recently confirmed by the New York State Office of the Attorney General, who investigated CMC and required the company to sign a consent decree that made a number of damning admissions. A copy of the settlement agreement between CMC and the Attorney General's office is attached hereto as **Exhibit C.**

35. In his press release describing the settlement, Attorney General Schneiderman detailed that CMC's actions represented "substandard care and mismanagement," and that CMC was "shortchanging medical services" for detainees. **See Exhibit D**.

36. The settlement agreement further found that CMC employed "unlicensed and inexperienced staff; inadequate staffing; lack of adequate medical oversight; and failure to adhere to medical and administrative protocols and procedures" at CMC facilities. Settlement Agreement, p. 5 ¶11.

37. The settlement agreement also addressed CMC's failure to pay penalties imposed against them regarding their failure to staff the Monroe County Jail with appropriately qualified medical professionals. Settlement Agreement, p. 5 ¶21-28. The settlement agreement found that

when the penalties were paid, they were paid to the office of the Monroe County Sheriff instead of the County Executive. Settlement Agreement, p. 5 ¶29.

38. Upon information and belief, this conduct occurred at the Albany County Jail, in that penalties incurred by CMC for failing to employ appropriately qualified professional were paid to Sheriff Craig Apple instead of the County Executive. Sheriff Craig Apple also received a substantial amount of campaign contributions from CMC and their executive officers during his tenure as Sheriff. It goes without saying that receiving campaign contributions from a private jail medical provider gives a clear financial incentive for Sheriff Apple to look the other way while his inmates die and suffer egregious injuries at his correctional facility.

39. The Attorney General's Office, after conducting a review of 20 medical records at the Tioga County Jail, also found that CMC staff did not "make necessary referrals to a psychiatrist or physician" and that "not one of the medical records showed evidence of a physician ... oversight, and that staff dispensed medications in the absence of medical orders." Settlement Agreement, p. 5 ¶10. Plaintiff believes that this is exactly what happened in this case, given the decedent was not provided any meaningful medical treatment, and was likely not referred to a trained physician until he was likely already critically ill.

40. Regardless of this pattern of misconduct, Mark Cannon, Jr. would be alive had he received adequate medical treatment.

41. During all times mentioned in this Complaint, the Defendants were acting under color of state law, that is, under color of the Constitution, statutes, laws, charter, ordinances, rules, regulations, customs, and usages of the State of New York, Albany County, and Correctional Medical Care, Inc.

42. Correctional Medical Care, and their employees were also operating under color of state law, in that these defendants are performing a function traditionally reserved for state and/or municipal agencies, and as such are equally responsible for the violation of civil rights as if they were state actors.

43. The Defendants, at all times mentioned in the Complaint, either knew or should have known that their actions violated clearly established law protecting the Constitutional and statutory rights of the Plaintiff.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS SILVER MASABA, K. COOGAN, AND JOHN DOES 1-3

**Violation of Constitutional Rights under Color of State Law
-- Deliberate Indifference to Serious Medical Needs—**

44. Plaintiff incorporates by reference and realleges each and every allegation stated herein.

45. The Eighth Amendment to the United States Constitution precludes prison officials from willfully denying medical treatment to a detainee with serious medical needs, as such conduct would constitute cruel and unusual punishment and/or a violation of the right to due process of law.

46. The actions of the Defendants detailed above violated Mark Cannon, Jr's rights under the United States Constitution. In short, it was not objectively reasonable for the Defendants to ignore decedent's serious medical symptoms including dizziness, severe motor impairment, incoherence, and foaming at the mouth. It was also not objectively reasonable for the Defendants to refuse to provide him with appropriate, necessary medical treatment, including providing him

basic medication, ensuring that a qualified medical professional evaluate him, and/or sending him to the hospital. In fact, the Defendants' actions demonstrate a deliberate indifference to decedent's serious medical needs.

47. All of the individual Defendants were acting in their capacity either as policy makers and/or medical staff of Correctional Medical Care, a company contracted to provide constitutionally mandated medical treatment and therefore acting under color of state law. As such their actions and inactions also represent a violation of 42 U.S.C. § 1983.

48. Defendants' actions were motivated by malice and/or are grossly negligent.

49. As a direct and proximate result of the unconstitutional acts described above, Mark Cannon, Jr. was irreparably injured when he died. The Plaintiff expressly seeks damages for decedent's loss of life.

**AS AND FOR A SECOND CAUSE OF ACTION AGAINST CORRECTIONAL MEDICAL CARE, INC., EMRE UMAR, MARIA CARPIO, SILVER MASABA, CRAIG APPLE, AND THE COUNTY OF ALBANY**

**--Implementation of Municipal Policies and Practices that Directly Violate Constitutional Rights/ Failure to Implement Municipal Policies to Avoid Constitutional Deprivations and/or Failure to Train and Supervise Employees under Color of State Law--**

50. Plaintiff incorporates by reference and realleges each and every allegation stated herein.

51. The Eighth Amendment to the United States Constitution precludes prison officials from willfully denying medical treatment to a detainee with serious medical needs as such conduct would constitute cruel and unusual punishment and/or a violation of the right to due process of law.

52.     Upon information and belief, the above-listed defendants, through express policy, practices or the inactions of its policy makers, had a policy and/or practice of not providing appropriate medical care to detainees at the Albany County Jail and many other local jails across the country. Specifically, these defendants failed to adopt appropriate policies regarding the provision of medical treatment to detainees at the Albany County Jail who exhibit serious medical symptoms, and/or failed to employ appropriate medical staff. This policy is evident given the decedent was denied medical treatment in the face of extreme medical symptoms such as dizziness, severe motor impairment, incoherence, and foaming at the mouth.

53.     Upon information and belief, one reason why Mark Cannon, Jr. failed to receive adequate medical treatment was because of concerns by the above-listed defendants regarding the expenses involved in properly caring for him and other detainees.

54.     The County of Albany is vicariously liable for the actions of Correctional Medical Care, Inc.

55.     As a direct and proximate result of the unconstitutional acts described above, Mark Cannon, Jr. was irreparably injured when he died. The Plaintiff expressly seeks damages for decedent's loss of life.

### AS AND FOR A THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS

**Violation of State Law
-- Claim for Conscious Pain and Suffering--**

56.     Plaintiff incorporates by reference and realleges each and every allegation stated herein.

57.     The actions of the Defendants detailed above detailed above represent a claim for wrongful death under the laws of the State of New York. Specifically, the medical care provided

15

to Mark Cannon, Jr. by the Defendants was clearly negligent; in fact it was grossly so. A wrongful death claim will be established after the filing of a Notice of Claim.

58.   The Plaintiff further asserts a claim for conscious pain and suffering against all Defendants, as well as a claim for loss of companionship for the child of Mark Cannon, Jr.

59.   Additionally, Defendant Albany County is directly responsible for the actions and inactions of its various employees taken in the scope of their employment, and is consequently directly responsible for decedent's wrongful death and conscious pain and suffering.  Correctional Medical Care are similarly responsible for the conduct of its employees.

60.   As a direct and proximate result of the illegal acts described above, Mark Cannon, Jr. was irreparably injured when he died.

## DEMAND FOR PUNITIVE DAMAGES

61.   The actions and inactions of all Defendants (with the exception of Albany County) detailed above, especially when considering the pattern of misconduct by Correctional Medical Care in causing the deaths of several detainees, are extreme and outrageous.  The Plaintiff does not seek punitive damages against the County of Albany.

## DEMAND FOR TRIAL BY JURY

62.   The Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff Tracy Cannon requests that this Honorable Court grant her the following relief:

A.    A judgment in favor of Plaintiff against all Defendants for compensatory damages in an amount to be determined by a properly charged jury;

B.    A judgment in favor of Plaintiff against all Defendants, with the exception of Albany County, for punitive damages in an amount to be determined by a properly charged jury;

C.    A monetary award for attorney's fees and the costs of this action, pursuant to 42 U.S.C. § 1988;

D.    Any other relief that this Court finds to be just, proper and equitable.

Respectfully Submitted By:

/s Elmer Robert Keach, III

Dated: November 25, 2015

_____
Elmer Robert Keach, III, Esquire
Maria K. Dyson, Esquire
LAW OFFICES OF ELMER ROBERT KEACH, III, PC
One Pine West Plaza, Suite 109
Albany, NY  12205
Telephone: 518.434.1718
Telecopier: 518.770.1558
Electronic Mail: bobkeach@keachlawfirm.com

**ATTORNEYS FOR PLAINTIFF**