**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

TRACY CANNON, *as Administratrix of the Estate of* MARK CANNON, Jr.,

                                Plaintiff,

- v -                                Civ. No. 9:15-CV-1417 (DJS)

CORRECTIONAL MEDICAL CARE, INC, *et al.*,

                                Defendants.

**APPEARANCES:**                                              **OF COUNSEL:**

LAW OFFICES OF ELMER ROBERT                    ELMER R. KEACH, III, ESQ
KEACH, III, P.C.                                              MARIA K. DYSON, ESQ.
*Counsel for Plaintiff*
One Pine West Plaza, Suite 109
Albany, NY 12205

REBAR BERNSTIEL                                         CATHLEEN KELLY REBAR,
*Counsel for CMC Defendants*[1]                          ESQ.
Time & Life Building
1271 Avenue of the Americas, Suite 4300
New York, NY 10020

THUILLEZ, FORD LAW FIRM                         MOLLY C. CASEY, ESQ.
*Counsel for Defendant Coogan*
20 Corporate Woods Boulevard
Albany, NY 12211

BURKE, SCOLAMIERO LAW FIRM                THOMAS A. CULLEN, ESQ.
*Counsel for Defendant Goyer*
7 Washington Square
Albany, NY 12205

---

[1] The "CMC Defendants" include Correctional Medical Care, Inc., Emre Umar, Maria Carpio, Dr. Silver Masaba, and John Doe 1-2.

| | |
|---|---|
| ALBANY COUNTY ATTORNEY'S OFFICE<br>*Counsel for Albany County Defendants*[2]<br>112 State Street, Suite 1010<br>Albany, NY 12207 | TRACY A. MURPHY, ESQ. |
| TOWNE, RYAN LAW FIRM<br>*Counsel for Albany County Defendants*<br>450 New Karner Road<br>P.O. Box 15072<br>Albany, NY 12205 | JOHN W. LIGUORI, ESQ. |

**DANIEL J. STEWART**
**United States Magistrate Judge**

## DECISION and ORDER

On August 30, 2014, Mark Cannon, Jr. died while in the custody of the Albany County Sheriff. Thereafter, on November 25, 2015, this civil rights lawsuit was commenced by Tracy Cannon, the Administratrix of the Estate of Mark Cannon, Jr., against Correctional Medical Care and its staff, as well as against the County of Albany and its officials. Dkt. No. 1, Compl. Nearing the end of a lengthy litigation process, a settlement conference was held with the Court which ultimately resulted in a settlement of the case. That settlement was placed on the record and consisted of a monetary payment between Correctional Medical Care and the County of Albany, and Plaintiff, with all other claims and cross-claims to be discontinued and dismissed. However, because the action involved the alleged wrongful death of Mark Cannon, Jr., whose sole distributee is his daughter, a formal motion to approve

---

[2] The "Albany County Defendants" include County of Albany, Craig Apple, Sr., and Christian Clark.

the settlement was required pursuant to New York State Estates, Powers and Trusts Law ("EPTL") § 5-4.6 and New York State Surrogate's Court Procedure Act § 2204.

On October 26, 2017, Plaintiff's counsel filed a Motion to Approve Settlement of Wrongful Death And Civil Rights Action. Dkt. No. 165. The CMC Defendants are generally in support of the Motion to Approve Settlement, but object to certain statements and characterizations made by Plaintiff's counsel in his Motion papers; question the procedure for the payment of the settlement and funding of the proposed structure; and have concerns regarding the scope of the non-disparagement clause agreed to by the parties. Dkt. Nos. 168 & 172. Defendants County of Albany, Goyer, and Coogan join in the request to settle the action. Dkt. Nos. 169, 170 & 171.

With regard to the proposed settlement, the Court has considered the total settlement of $1,094,999.99[3] and finds it to be an appropriate resolution after considering the merits of the action. *See* EPTL § 5-4.6(a). The Court has dealt extensively with the facts of this case in prior rulings, in particular in its decision regarding the Commission of Correction Report, Dkt. No. 136, and incorporates those facts by reference in this Decision and Order. Plaintiff has alleged that there was a failure to provide Mark Cannon, Jr., with proper medical care, and further, that this failure was part of a broader pattern and practice implemented by Correctional Medical Care. Dkt. No. 52, Am. Compl. at ¶¶ 15-46; Dkt. No. 165-1, Keach Affirm. at ¶¶ 3-4. The Defendants have denied the allegations contained in the Amended

---

[3] Of that amount, $999,999.99 is to be paid by Correctional Medical Care, Inc., and $95,000 is to be paid by the County of Albany.

Complaint, Dkt. Nos. 65 & 80, and the Albany County Defendants and the CMC Defendants specifically moved to dismiss, *inter alia*, Plaintiff's pattern and practice claim. Dkt. Nos. 81 & 99.[4] Plaintiff's attorney indicates to the Court several factors which counsel in favor of settlement, including the risks of litigation in this action, particularly as may relate to damages.  Keach Affirm. at ¶¶ 7-11.  Based upon the foregoing, together with the opportunity the Court had to discuss the matter privately with each side (as well as the mother of Mr. Cannon's daughter) during a lengthy settlement conference, the Court concludes that the proposed settlement is appropriate under the facts and circumstances of this case.[5]

It is also the Court's obligation to review the proposed attorney's fee requested by Plaintiff's counsel.  Mr. Keach notes that his firm expended $20,773.24 as disbursements in this matter, and further notes that his office spent approximately 800 hours in preparing and prosecuting the matter.  Keach Affirm. at ¶¶ 13 & 16.  In addition, Plaintiff Tracy Cannon, on behalf of the Estate of Mark Cannon, Jr., signed a retainer agreement authorizing a one-third attorney's fee, calculated *prior* to the deduction of expenses. *Id.* at ¶¶ 5 &13; *see also* Dkt. No. 165-5.  The Court has reviewed the retainer agreement and finds that it is in compliance with State law, and in particular with 22 N.Y.C.R.R. § 806.13 of the Appellate Division rules dealing with contingent fees in claims involving wrongful death.

---

[4] The Motions to Dismiss were still pending at the time this settlement agreement was entered into.

[5] Both Mr. Cannon's mother, as well as the distributee's mother, have submitted Affidavits in support of the proposed settlement.  Dkt. Nos. 165-8 & 165-9.

Accordingly, the Court authorizes reimbursement of disbursements to Plaintiff's counsel in the amount of $20,773.24, and approves an attorney's fee award in the amount of $364,635.00, for a total amount of $385,408.24. Mr. Keach and his Firm will continue on as representative of the Estate in order to obtain Surrogate's Court approval. In that regard, he shall be entitled to reimbursement of additional expenses from the Estate, but he shall not be entitled to any further fees for work related to the wrongful death claim. *See Estate of Haag*, 43 N.Y.S.3d 870 (N.Y. Sur. Ct. 2016).

As to the settlement procedure, Plaintiff's counsel is requesting that any distribution of the settlement proceeds be approved by the Surrogate's Court.[6] Further, Plaintiff's counsel is requesting that $650,000.00 of the settlement proceeds be utilized to fund a structured settlement account for the benefit of Mr. Cannon's minor daughter. Because of tax regulations specifically relating to the creation of such a structured settlement account, *see* Dkt. No. 173, Plaintiff's counsel is requesting that the $650,000.00 not be paid until a short period of time after the Surrogate's Court approves of the structured settlement and distribution. The remaining amount of the settlement consists of $385,408.24 in attorney's fees and expenses, as well as a residual amount of $59,591.75. These amounts would be paid pursuant to New York's prompt payment law. N.Y. C.P.L.R. § 5003-a. The above-referenced residual amount would be placed in an account as authorized by the May 24, 2016 decree signed by the Honorable Vincent Versaci, Schenectady County Surrogate's Court.

---

[6] The proper venue for proceedings relating to the Estate is in the Surrogate's Court of the County of the decedent's domicile at the time of his death. N.Y. SURR. CT. PROC. ACT § 205.

Dkt. No. 165-2. The Court agrees that the procedure outlined above is the correct procedure. L.R. N.D.N.Y. 17.1.

The final issue in dispute concerns the terms of any non-disparagement agreement between the parties. During the course of the settlement conference with the Court, the Defendants requested, and the Plaintiff and her counsel agreed to, a non-disparagement clause in the settlement. The specific terms of that clause, however, are in dispute. Counsel for the CMC Defendants has proposed the following three paragraphs:

> This Release does not constitute an admission of liability by the Releasees. The Releasor, and their agents, representatives, and counsel, agree to strictly maintain the confidentiality of all the terms and conditions of this Release and the settlement, and to not disclose any information relating to any and all terms of this Release and the settlement to any person or entity.
>
> Releasor **and their attorneys** agree not to make any statements, written or verbal, or cause or encourage others to make any statements, written or verbal, that defame, disparage or in any way allege, intimate, infer, suggest or otherwise imply wrongdoing by Releasees related to the substance of this lawsuit. Releasor acknowledges and agrees that this prohibition extends to public or private statements, and statements made during the course of other and/or future litigation.
>
> Releasor and their attorneys acknowledge and agree that they will not reference this settlement as evidence of wrongdoing by Correctional Medical Care, Inc. or any of their current or former employees, or its successor corporations . . . in any public or private statements, or in statements made during the course of pending and/or future litigation.

Dkt. No. 168 at pp. 2-3 (emphasis added).

Counsel for Plaintiff objects to the terms of this proposal, which he believes amounts to an agreement that Plaintiff's counsel never discuss the facts of this case again in any setting as a condition of the settlement. Dkt. No. 173 at p. 3. The Court starts with the

understanding of the parties on this issue as expressed during the settlement conference:

> MS. REBAR: Yes, Your Honor, with the additional caveat that while I understand Your Honor is not going to seal or issue any types of additional protective orders, it's my understanding that Ms. Mundorf did discuss with Mr. Keach that the language of the settlement agreement would make the settlement, as far as Mr. Keach is concerned, confidential. The same language that would appear in the Lynch settlement, settlement documents, would also appear in the Cannon settlement documents.
>
> THE COURT: All right. I'm what sure what that language is. Certainly the parties can agree to anything, but I can tell you just generally, and I know that you all understand this, is that this is a case that I think has public importance, and so insofar as it is my determination that the actual settlement and the approval of the settlement is going to be a public record.
>
> But Bob, I don't know. With regard to specifically what Cathleen said, do you understand what she's talking about?
>
> MR. KEACH: I think there's some kind of -- there's language that Correctional Medical Care

wants that I'm not going to rely upon the settlement of this case in other litigation. Certainly I can't rely upon the settlement of this case pursuant to the Federal Rules of Evidence in any event. That's not admissible, and none of the complaints I filed against Correctional Medical Care, while they have discussed the facts of cases that I've worked on, have not discussed settlements or amounts or anything like that. So if that's what -- I'm pretty sure that's what Ms. Rebar is referring to. Certainly that's acceptable to me.

    THE COURT: Okay. Let me then turn -- Cathleen, is there anything further you want to add?

    MS. REBAR: I just want to relay the language as it was relayed to me just so we can -- that Mr. Keach agrees to confidentiality and no use in future litigation of the settlement. Is that your understanding, Mr. Keach?

    MR. KEACH: I don't understand what you mean by confidentiality. I mean I'm going to file my documents supporting this settlement on the public record. The Court, this particular Court has already rejected confidentiality language in the Helijas matter. If what you're asking me is: Am I going to

> go out there as part of this settlement and go on TV
> or to the newspapers and say all kinds of derogatory
> stuff about Correctional Medical Care? The answer is
> no. I'm not going to do that. Is that what you're
> concerned about?
>
>     MS. REBAR: Yes.
>
>     MR. KEACH: You're buying complete peace from me,
> Cathleen, and complete peace is what you're going to
> get from this case. I don't have any control over
> the newspapers and what they print or don't print.
> All I'm going to say is that my client is satisfied
> with the settlement and that, you know, is glad that
> her grandchild will benefit from the proceeds of the
> estate, something like that in words or substance.
> Does that meet with your approval?
>
>     MS. REBAR: Yes, thank you.

Dkt. No. 174 at pp. 7-9.

The Court understands that there are significant disputes with regard to the underlying facts of this case, and that the settlement of this action is *not* an admission by any Defendant that they engaged in misconduct or wrongdoing. Further, it is well-settled that a "settlement neither requires nor implies any judicial endorsement of either party's claims or theories." *Bates v. Long Island Railroad Co.*, 997 F.2d 1028, 1038 (2d Cir. 1993). Further, Federal Rule of Evidence 408 governs the admissibility of settlement agreements. It provides:

> (a) **Prohibited Uses**. Evidence of the following is not admissible – on behalf of any party – either to prove or disprove the validity or amount of the disputed claim or to impeach by a prior inconsistent statement or contradiction:
>
> (1) furnishing, promising, or offering – or accepting, promising to accept, or offering to accept – a valuable consideration in compromising or attempting to compromise the claim; . . .

The parties are in agreement with this general principle. Therefore, the first paragraph of the CMC Defendants' proposal is warranted and appropriate.

As to the second paragraph, this paragraph goes to the heart of Plaintiff's obligation not to disparage the Defendants in any setting. However, by adding the words "**and their attorneys**" and by referencing future legal cases, the proposed agreement significantly affects Plaintiff's counsel's role in representing future clients in the courtroom. In other words, will Plaintiff's counsel be prevented from introducing or arguing the underlying facts of this action in some future lawsuit? The Court does not believe that such a result was intended nor agreed to.

While evidence of the settlement would not generally be admissible against any Defendant as evidence of negligence or misconduct, the settlement cannot bar inquiry into the facts of the case if they are legitimately at issue in some future lawsuit. Of course, whether evidence of the facts of this case are proportionally relevant to the needs of some future case, *see* FED. R. CIV. PROC. 26(b)(1), or admissible at a trial, is ultimately an issue for the District Court or the presiding Magistrate Judge in that future case. This Court cannot foreclose that avenue of inquiry, nor can the parties agree to preclude existing facts as

admissible evidence.  In the case of Mark Cannon, Jr., for example, the Commission of Correction has already issued a detailed report concerning its findings of the medical care provided to Mr. Cannon, and the relationship between that level of medical care and Mr. Cannon's death.  A plaintiff in a future lawsuit against Correctional Medical Care could certainly make reference to that finding by a public agency, and all the facts upon which it was based, as specifically noted in this Court's decision dated June 27, 2017.  Dkt. No. 136.  It would be incongruous, therefore, for the Court to approve an agreement whereby one plaintiff could introduce evidence of the Commission of Correction Report and argue that the facts of the Cannon incident supported his or her case in connection with some issue of notice, or a claim of *Monell* liability, but another plaintiff, who happened to be represented by Plaintiff's counsel, could not.[7]  No such limitation was agreed to by the parties and their counsel at the settlement conference, and therefore the Court will not compel Plaintiff's counsel to abide by such a limitation.

The Court's ruling is further supported by the language of the *Lynch* settlement, the terms of which the lawyers specifically referenced during the settlement colloquy.  The *Lynch* settlement agreement has now been provided to the Court, and it contains the specific language of paragraph two, *without* the addition of the words "and their attorneys."  The Court therefore modifies the proposed language to eliminate these three words, and otherwise approves of the proposed second paragraph.

---

[7] Such a limitation would also create significant ethical concerns.  *See* N.Y. Rules of Prof'l Conduct R. 5.6(a)(2) ("A lawyer shall not participate in offering or making . . . (2) an agreement in which a restriction on a lawyers right to practice is part of the settlement of a client controversy.").

As to the third proposed paragraph, I find that this language is appropriate. Plaintiff's counsel made specific representations at the settlement conference to counsel for the CMC Defendants that he would not make disparaging public statements with regard to the Cannon settlement, and would merely state that Plaintiff was satisfied with the result. In the words of Plaintiff's counsel, the settlement agreement bought "complete peace" in connection with public statements by Plaintiff's counsel. The third paragraph properly encapsulates this agreement.

For the reasons stated herein, it is hereby

**ORDERED**, that Plaintiff's Motion for Court Approval of the Wrongful Death Settlement (Dkt. No. 165) is **GRANTED**; and it is further

**ORDERED**, that the letter motions of the Albany County Defendants, the CMC Defendants, and Defendants Coogan and Goyer (Dkt. Nos. 168-172) are **GRANTED** to the extent they are consistent with this Decision and Order; and it is further

**ORDERED**, that all claims against Defendants Correctional Medical Care, Inc., Umar, Carpio, Masaba, County of Albany, John Doe 1-3, Goyer, Coogan, Apple, Sr., and Clark are hereby **DISMISSED**; and it is further

**ORDERED**, that all cross-claims are **DISMISSED**; and it is further

**ORDERED**, that the Albany County Defendants and the CMC Defendants' Motions to Dismiss (Dkt. Nos. 81 & 99) are **DENIED** as moot; and it is further

**ORDERED**, that Tracy Cannon, as Administratrix of the Estate of Mark Cannon, Jr.,

is hereby authorized to accept the sum of $1,094,999.99 for settlement of all claims made on behalf of the decedent in this matter, said amount to include all claims for attorney's fees and costs. The Administratrix of the Estate of Mark Cannon, Jr. is further authorized to execute and deliver to the CMC Defendants and the Albany County Defendants a release for all claims asserted, or that could have been asserted in this litigation; and it is further

**ORDERED**, that the terms of any non-disparagement agreement shall be consistent with this Court's ruling; and it is further

**ORDERED**, that the Application of Plaintiff's Attorney for attorney's fees and expenses is **GRANTED**. Plaintiff's attorney is awarded $20,773.24 as reimbursement for litigation expenses, and $364,635.00 in attorney's fees, pursuant to the terms of the signed retainer agreement with the Law Offices of Elmer Robert Keach, III, P.C.; and it is further

**ORDERED**, that $650,000.00 of the settlement proceeds shall be held by the settling parties, and their insurance carriers, to fund a structured settlement agreement for Mark Cannon, Jr.'s daughter, said structured settlement to be approved by the Schenectady County Surrogate's Court, and to be funded within a period of time to be determined by the Surrogate's Court; and it is further

**ORDERED**, that $385,408.24 in attorneys fees and expenses shall be paid to Plaintiff's counsel pursuant to the time constraints set forth in New York's Prompt Payment Statute, C.P.L.R. § 5003-a; and it is further

**ORDERED**, that the remaining share of the settlement, $59,591.75, shall be paid to Plaintiff's counsel pursuant to the time constraints set forth in New York's Prompt Payment

Statute, C.P.L.R. § 5003-a, the distribution of which is referred to the Schenectady County Surrogate's Court for disposition; and it is further

**ORDERED**, that Plaintiff's counsel shall continue to serve as attorney for the Estate until the entry of the final decree in the Schenectady County Surrogate's Court; and it is further

**ORDERED**, that jurisdiction is retained over this matter to enforce the terms of the settlement agreement; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order upon the parties to this action.

Date: December 14, 2017
Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge